1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8

9   ANTHONY VIGNOLI,                    )
                                        )
10              Petitioner,             )        3:09-cv-0224-LRH-VPC
                                        )
11  vs.                                 )        **ORDER**
                                        )
12  STATE OF NEVADA, *et al.*,          )
                                        )
13              Respondents.            )
    _____/

14

15          Anthony Vignoli, a Nevada prisoner, has filed a second amended petition for a writ of habeas

16  corpus pursuant to 28 U.S.C. § 2254 (docket #27).  Respondents have filed their answer (docket

17  #28) and the matter is ripe for review and decision.

18  **I.      Procedural History**

19          Petitioner was charged with trafficking in a controlled substance, possession of a controlled

20  substance for purposes of sale, and conspiracy to sell a controlled substance, along with two co-

21  defendants, Anthony Garcia and Marietta Rosalie Henson.  Exhibit 13.[1]  The three were tried before

22  a jury, and on June 2, 2005, petitioner was found guilty of Count I, trafficking in a controlled

23  substance, and Count III, conspiracy to sell a controlled substance.  Exhibit 30.  During trial, the

24  court dismissed Count II against petitioner.  Exhibit 10 at 26.  Petitioner was sentenced to a term of

25  10 to 25 years in prison on Count I and a concurrent term of 12-30 months in prison on Count III.

26  Exhibit 34.

27  _____

28          [1] The exhibits cited in this order were submitted by respondents in support of their motion to
    dismiss and are found in the court's docket at 15.

1    Petitioner filed a direct appeal raising a single claim for relief objecting to the use at trial of a

2   preliminary hearing transcript of testimony from a witness that was unavailable to testify in person.

3   Exhibit 45.  The Nevada Supreme Court affirmed his conviction.  Exhibit 47.

4    While the appeal was still pending, petitioner filed a state post-conviction petition.  Exhibit

5   45.  He supplemented the petition raising three additional grounds for relief.  Thereafter, the court

6   appointed counsel and a second supplement was filed.  Exhibit 66 and 67.  An evidentiary hearing

7   was conducted by the state district court and the petition was denied.  Exhibits 79 and 94.  Petitioner

8   appealed.

9    On appeal petitioner raised four claims for relief.  Exhibit 95.  The Nevada Supreme Court

10   affirmed the state district court's decision on March 26, 2009.  Exhibit 104.  Thereafter, petitioner

11   filed his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising eight

12   grounds for relief (docket #6).  Upon respondents' motion to dismiss, petitioner amended his

13   petition, dropping several unexhausted claims (docket #27).  Respondents have answered.

14   **II.    Standard for Review**

15    28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

16   (AEDPA), provides the standards of review  that this Court applies to the petition in this case:

17

18    An application for a writ of habeas corpus on behalf of a person in custody
     pursuant to the judgment of a State court shall not be granted with respect to any
     claim that was adjudicated on the merits in State court proceedings unless the

19   adjudication of the claim --

20    (1)  resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme Court

21   of the United States; or

22    (2)  resulted in a decision that was based on an unreasonable determination of
     the facts in light of the evidence presented in the State court proceeding.

23

24   28 U.S.C. §2254(d).

25    A state court decision is contrary to clearly established Supreme Court precedent, within the

26   meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set

27   forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

28

2

1    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

2    different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166,

3    1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495,

4    146 L.Ed.2d 389 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d

5    914 (2002).

6        A state court decision is an unreasonable application of clearly established Supreme Court

7    precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct

8    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

9    principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174

10   (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495).  The "unreasonable application" clause requires

11   the state court decision to be more than incorrect or erroneous; the state court's application of clearly

12   established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct.

13   1495).

14       In determining whether a state court decision is contrary to federal law, this Court looks to

15   the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

16   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct. 324 (2001)

17       With respect to pure questions of fact, "a determination of a factual issue made by a State

18   court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

19   presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

20   **III.    Discussion**

21       Ground One

22       In this ground for relief, petitioner claims trial and appellate counsel were ineffective for

23   failing to adequately litigate sentencing questions in violation of the Fifth, Sixth, Eighth and

24   Fourteenth Amendments.  Specifically, petitioner asserts that the sentence he received was "highly

25   disproportionate to the sentence imposed upon Garcia" noting that Garcia received probation and he

26   received twenty-five years.  Petitioner claims his right to equal protection was violated by the

27   sentence and that counsel should have litigated the issue on direct appeal.

28

3

1    To prove ineffective assistance of counsel, petitioner must prove (1) that his attorney's

2    actions were outside the wide range of professionally competent assistance, and (2) that counsel's

3    actions prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).   The *Strickland*

4    Court instructed that review of an attorney's performance must be "highly deferential," and must

5    adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting

6    effects of hindsight."  *Id.* at 689.  A reviewing court must "indulge a strong presumption that

7    counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the

8    [petitioner] must overcome the presumption that ... the challenged action might be considered sound

9    trial strategy."  *Id.* (citation omitted).

10    Equal protection claims arise when a charge is made that similarly situated individuals are

11    treated differently without a rational relationship to a legitimate state purpose.  *See San Antonio*

12    *School District v. Rodriguez*, 411 U.S. 1 (1972).  To succeed on an equal protection claim, a plaintiff

13    must allege that defendants acted with intentional discrimination.  *Lowe v. City of Monrovia*, 775

14    F.2d 998, 1010 (9th Cir. 1985); *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).

15    Thus, in order for petitioner to succeed on this claim, he must be able to demonstrate that his

16    counsel had reason to believe that the sentencing disparity between petitioner and Garcia was based

17    on unlawful discrimination between two individuals that were similarly situated and, that despite

18    this belief, counsel failed to object.  A criminal sentence is generally within the discretion of the

19    judge and is not reversible so long as the sentence falls within the bounds set by statute.  *U.S. v.*

20    *Garrett,* 680 F.2d 650, 652  (9th Cir. 1982).  Disparity in sentences imposed upon codefendants is

21    "well within the discretion of the sentencing judge... if the circumstances so require," *id.,* as there is

22    no obligation to impose equal sentences among codefendants.  *U.S. v. Kohl,* 972 F.2d 294, 300 (9th

23    Cir. 1992).

24    According to the Nevada Supreme Court, petitioner and Garcia were not similarly situated

25    and the differences in their sentences was justified.  In denying petitioner's claim on appeal from his

26    post-conviction denial, the Nevada Supreme Court found that he and Garcia were not similarly

27    situated because Garcia provided substantial assistance to the prosecution while petitioner did not.

28

4

1  Exhibit 104, p. 7.   As a result, it is impossible for petitioner to show that his counsel's performance

2  prejudiced him in this regard.  Because the sentencing disparity was within the court's discretion and

3  justified by the assistance afforded by Garcia to the state in prosecuting the case, and because

4  petitioner made no such contribution, an objection from counsel on this basis would not have been

5  successful.  Petitioner has not shown that his counsel was ineffective or that he was prejudiced by

6  their performance.  No relief is warranted on ground one of the second amended petition.

7          Ground Two

8          In his second ground for relief, petitioner claims he was denied the effective assistance of

9  counsel because counsel failed to investigate and prepare for trial which, in turn, resulted in

10  petitioner's decision to reject a plea agreement offered by the state.  Petitioner argues that because

11  counsel did not know or inform petitioner that his codefendant would testify against him, his

12  decision to decline the plea offer was uninformed.

13          Counsel has "a duty to make reasonable investigations or to make a reasonable decision that

14  makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More specifically, "a

15  particular decision not to investigate must be directly assessed for reasonableness in all the

16  circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*  Petitioner

17  claims that counsel's failure to investigate led him to reject a plea offer.  His claim is without merit

18  as the unanticipated witness, his codefendant, Garcia, was well known to counsel and to petitioner.

19  Additional investigation would not have revealed the  content of Garcia's intended testimony

20  because the facts and circumstances of the crime were already known to petitioner.[2]  It was Garcia's

21  right and his decision to testify in his own defense.  Petitioner's counsel could not anticipate that

22  decision.

23          In determining the merits of this claim, the Nevada Supreme Court concluded that the claim

24  was without merit.  The court said:

25              We conclude that Vignoli failed to demonstrate that his counsel was

26  _____

27          [2] Henson, the second co-defendant also testified against petitioner at trial. Exhibit 26, pp. 189-
200.  However, her testimony was not anticipated because she did not indicate a desire to testify when
28  the court canvassed the defendants as to their right to testify or remain silent.  Exhibit 26, pp 75-76.

5

1
2
3
4
5
6
7

> deficient or that he was prejudiced. At the evidentiary hearing, Vignoli's counsel stated that he advised Vignoli that Garcia could testify at trial and that Vignoli should accept the state's plea offer. Further, as both Garcia and Henson were codefendants, the State could not have called either of them during its case in chief. *See* U.S. Const. Amend. V; Nev. Const. Art. I, § 8. Henson and Garcia each had the right to testify in their own defense and could elect to exercise that right up until the close of their case in the defense. While the State called Henson in its rebuttal, it did so after she had pleaded guilty. Vignoli did not demonstrate that any investigation could have discovered that the State intended to call Henson and Garcia, that they would testify, or that Henson would plead guilty during the tiral. Therefore, the district court did not err in denying this claim.

8  Exhibit 104, p. 3.

9       As the quoted portion of the Nevada Supreme Court's order demonstrates, the state court

10 applied the proper federal legal standard and made a reasonable determination of the facts in light of

11 the evidence in the record in denying this ground two. Petitioner is not entitled to relief from this

12 Court.

13       Ground Three

14       Petitioner's third ground for relief avers that he was denied the effective assistance of

15 counsel. The facts he provides, however, do not relate to the performance of counsel. Petitioner

16 asserts that "[t]he prosecution may not vouch for a witness;... The actions of DDA Pearson in asking

17 the witnesses if Vignoli was lying cornered Vignoli into a position where he was trapped - to do so

18 with a witness who was not disclosed and whose testimony was gained after the testimony of

19 Vignoli had occurred only added insult to injury." Second Amended Petitioner, pp 14-15.

20       The facts alleged would more likely support a claim for prosecutorial misconduct. However,

21 as respondents point out, no such claim was ever presented to the Nevada Supreme Court on direct

22 appeal or on appeal from his denied post-conviction petition. This claim shall be denied, as

23 petitioner has not provided any facts to support his claim that counsel was ineffective under

24 *Strickland v. Washington* and he has never presented a claim of prosecutorial misconduct to the state

25 courts.

26       Ground Four

27       Petitioner claims that his trial and appellate counsel were ineffective for failing to object to

28

1    State's witnesses being noticed during the middle of the trial, violating his due process rights to

2    adequate notice of witnesses against him guaranteed by the Fifth Amendment.

3            Petitioner complains that after he had testified in his own defense, the State put on his

4    codefendant, Henson, who had negotiated a favorable guilty plea.  According to the petitioner, his

5    second codefendant, Garcia, also testified against him after Garcia was informed that his sentence

6    might be favorably impacted if he offered substantial assistance to the prosecution.  Petitioner

7    contends this turn of events violated the Nevada law requiring at least five days notice to the defense

8    of any witness testifying against him.  Petitioner argues this denied him a fair trial and that counsel

9    was ineffective for failing to object to the "tactic of the State," and appellate counsel was ineffective

10   for failing to raise the issue on direct appeal.

11           The Nevada Supreme Court concluded as follows:

12           ...Vignoli failed to demonstrate that his counsel was deficient.  The State
             must "file and serve upon the defendant a written notice containing the
13           names and last known addresses of all witnesses the prosecuting attorney
             intends to call during the case in chief of the State.  NRS 174.234(1)(a)(2).
14           The State did not call Henson or Garcia during its case in chief.  Moreover,
             the State could not have called either Garcia or Henson during its case in
15           chief because they were codefendants in the same trial against Vignoli.  *See*
             U.S. Const. Amend. V; Nev. Const. Art. I, § 8.  While both Garcia and
16           Henson testified at trial, Garcia offered his testimony during his defense and
             the State's rebuttal, and Henson testified during the State's rebuttal case after
17           she entered a guilty plea.  Therefore, the district court did not err in denying
             this claim.
18
     Exhibit 104, p. 5.
19
             Petitioner cannot show that this state court decision was contrary to or an unreasonable
20
     application of clearly established federal law.  He has not shown that his counsel's performance was
21
     deficient, as no objection to the witnesses was available and no claim related to their appearance and
22
     testimony would have changed the outcome on appeal.
23
             Ground four of the second amended petition is without merit and no relief shall be granted.
24
     **IV.    Certificate of Appealability**
25
             In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28
26
     U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951
27
     (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a
28

1  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

2  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

3  (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

4  assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).

5  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues

6  are debatable among jurists of reason; that a court could resolve the issues differently; or that the

7  questions are adequate to deserve encouragement to proceed further.  *Id.*

8          Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section

9  2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the

10  order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a

11  notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

12  considered the issues raised by petitioner, with respect to whether they satisfy the standard for

13  issuance of a certificate of appealability, and determines that none meet that standard.  The Court

14  will therefore deny petitioner a certificate of appealability.

15          **IT IS THEREFORE ORDERED** that Second Amended Petition for Writ of Habeas Corpus

16  (docket #27) is **DENIED.**

17          **IT IS FURTHER ORDERED** that no Certificate of Appealability shall issue in this matter.

18  The Clerk shall enter judgment accordingly.

19

20          Dated this 24th day of November, 2010.

21

22

23          _____

24          LARRY R. HICKS
           UNITED STATES DISTRICT JUDGE

25

26

27

28